UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

IN RE:

LA FAMILIA PRIMARY CARE, P.C.,  Case No. 23-10566-t11
A New Mexico Professional Corporation,

**<u>DEBTOR'S EMERGENCY MOTION FOR AN ORDER FINDING AND ORDERING THAT APPOINTMENT OF PATIENT CARE OMBUDSMAN IS NOT NECESSARY;</u>**

La Familia Primary Care, P.C., the Debtor-in-Possession in the above-captioned Chapter 11, Subchapter V Case (the "Debtor" or "La Familia"), by and through its attorneys, Business Law Southwest, LLC (Shay Elizabeth Meagle), respectfully moves the Court for entry of an order, pursuant to 11 U.S.C. §333, finding and ordering that appointment of a Patient Ombudsman in this case is not necessary. In support of this Motion, Debtor states:

**Pertinent Facts**

1. The Court has jurisdiction over this matter pursuant to 11 U.S.C. §333, 28 U.S.C. §§ 1344(a) and 157(a), and the Miscellaneous Order No. 84-0324 filed in the United States District Court for the District of New Mexico on March 19, 1992. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

2. Venue of this proceeding is proper in this District and before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3. Debtor file a voluntary Petition under Chapter 11, Subchapter V of the United States Bankruptcy Code on July 19, 2023 ("Petition Date"), commencing the above-captioned bankruptcy case ("Case").

4. Debtor designated itself as a "health care business" on its Petition.

5. The deadline for the Court to order appointment of a patient care ombudsman (unless it finds that such appointment is not necessary), pursuant to 11 U.S.C. §333(a), is **<u>August</u>**

1

**18, 2023**. Therefore, this motion is urgent, and Debtor asks for it to be subject to a reduced notice period and heard on an expedited basis.

6. Dr. Misrah Zmily is the only physician working at La Familia. In addition, one physician's assistant and one nurse practitioner (both licensed) were employed to work at La Familia (collectively referred to herein as the "Licensed Medical Professionals").

7. Since the opening of La Familia in 2006, 17 years ago, there have been no claims made against the malpractice insurance maintained by La Familia, and no malpractice claims made against any of the Licensed Medical Professionals or any professionals who have worked at La Familia in the past.

8. Debtor is aware of no potential malpractice claims against La Familia or the Licensed Medical Professionals, or any professionals who have worked for La Familia in the past.

9. Dr. Zmily has never received any complaint against his medical license and has never been involved in any disciplinary proceeding in any State in which he holds a medical license. To the best of Debtor's knowledge, the same is true of the other Licensed Medical Professionals.

10. La Familia and its Licensed Medical Professionals are sufficiently monitored by licensing agencies, including the following:

    A. New Mexico Medical Board;

    B. New Mexico Board of Nursing;

    C. U.S. Drug Enforcement Agency ("DEA");

    D. Colorado Medical Board.

11. Further, Dr. Zmily is presently under further scrutiny, as he is in the process of renewing his specialization in Internal Medicine.

12. In addition to the various licensing and specialization agencies/organizations, La Familia contracts with, and its Licensed Health Professionals were accredited by, a number of private insurance companies, as well as Medicare and Medicaid, all of whom impose strict guidelines concerning patient care, privacy, etc.

13. La Familia uses Health Fusion EMR for its electronic health records ("EHR") system. Health Fusion has been certified by the Federal Government and is compliant with privacy requirements.

14. La Familia follows an EHR routine procedure, and all medical records are either electronically generated initially or scanned into the EHR system within a short time after their receipt or generation by La Familia. La Familia complies with all Federal and State privacy and EHR regulations.

15. The quality of patient care provided by La Familia and its Licensed Health Professionals is monitored internally and externally. Dr. Zmily reviews the charts of all patients for which the physician's assistant or nurse practitioner provide care or prescribe medication or treatment. He also monitors the work of all staff.

16. The records of Dr. Zmily's patient care are sometimes reviewed by insurance companies, Medicaid, or Medicare, when they request copies of all or a portion of a patient's file. Care of certain Medicare patients is also reviewed by Zia Health Management employees who provide chronic care management and remote patient monitoring under contract with the Debtor. In turn, Dr. Zmily and La Familia's other Licensed Health Professionals review the work done by Zia Health Management.

17. There is no evidence of any issues with patient care or privacy relative to the Debtor, either before or after the Petition Date.

18. It was Medicare's determination of a substantial "overpayment" to La Familia and subsequent offset of other, approved, unrelated Medicare claims to credit towards such "overpayment" that directly precipitated the filing of this Case; it had nothing to do with problems in patient care quality or privacy concerns.

19. La Familia is not a surgical facility or a residential care facility. It is also not an urgent care or emergency service provider. It is a primary medical care practice.

20. Prepetition, after Medicare began the setoffs, in a step to decrease expenses, the Debtor closed its extended lab. La Familia's patients simply have to now use services of labs that are not as locally convenient, like the patients of almost all other Raton medical professionals do.

21. Likewise, in the event the Debtor must further drastically reduce the level of care it provides, its patients would have to go to another health professional inside Raton or outside of Raton. Because La Familia does not provide emergency care, the potential for injury to patients is minimal. Certainly, it is more convenient and a greater service to its patients, Debtor believes, for them to be able to come to La Familia for the same care as they have, and that is why Debtor filed this Case instead of shutting it down. However, it is not a matter of injury to patients.

22. Debtor is on a very tight budget, especially in the first few months of the Case, and cannot afford to incur the additional cost of a patient care ombudsman. Any such additional cost could cause failure of this Case and could prohibit the chances of making it to a successful reorganization. (*See* Cash Collateral Motion [Doc. 9], Schedule of Current Income & Expenses [Doc. 11].

4

Case 23-10566-t11    Doc 30    Filed 08/02/23    Entered 08/02/23 16:00:25 Page 4 of 9

23. The purpose of the filing of this Case was for Debtor to continue its business operations. There is no intention to do anything under the Plan or prior thereto that would put La Familia's interests at odds with those of its patients.

24. Although Debtor's patients are primarily seniors, they are not generally living in any care facility, and are primarily self-reliant and are both physically and mentally able to care for and advocate for themselves. Those that are not able to do so do not depend on La Familia for their day-to-day care, decision-making, or advocacy, but have other caregivers who have such role, separate from Debtor.

**Law and Argument**

25. 11 U.S.C. Section 333(a)(1) provides that, in a Chapter 7, 9, or 11 bankruptcy of a debtor who is a health care business, the court must order the appointment of a patient care ombudsman, within thirty (30) days after the Petition Date, unless the court finds that such an appointment is not necessary under the specific facts of the case.

26. The purpose of a patient care ombudsman is to monitor the quality of patient care and to represent the interest of the patients of the health care business. §333(a)(1).

27. Debtor did designate itself as a "health care business" ("HCB") in the Petition. However, Debtor's counsel did not believe it was clear whether or not Debtor actually met the definition of a HCB as defined in 11 U.S.C. §101(27A). However, Debtor and its counsel decided that it was better to err on the side of caution.

28. §101(27A) provides that the term "health care business"—

> **(A)** means any public or private entity (without regard to whether that entity is organized for profit or not for profit) that is primarily engaged in offering to the general public facilities and services for—
> **(i)** the diagnosis or treatment of injury, deformity, or disease; and
> **(ii)** surgical, drug treatment, psychiatric, or obstetric care; and

> **(B)** includes—
>> **(i)** any—
>>> **(I)** general or specialized hospital;
>>> **(II)** ancillary ambulatory, emergency, or surgical treatment facility;
>>> **(III)** hospice;
>>> **(IV)** home health agency; and
>>> **(V)** other health care institution that is similar to an entity referred to in subclause (I),(II), (III), or (IV); and
>>
>> **(ii)** any long-term care facility, including …

29. Debtor is an entity that is primarily engaged in offering *services* to the general public for the diagnosis or treatment of injury, deformity, or disease, and therefore satisfies subsection (A)(i) of the definition of a HCB. However, La Familia is not primarily engaged in offering services or facilities for surgery, drug treatment, psychiatric care, or obstetric care, and so very well may not satisfy subsection (A)(ii) of the definition. The definition makes clear that a healthcare business means an entity that satisfies both §101(27A) (A)(i) and (ii).

30. Further, §101(27A) (B) provides that the term health care business includes two (2) lists of types of entities set forth in subsections (B)(i) and (B)(ii). (B)(ii) lists only types of entities that are long-term care facilities. Debtor is not such a facility, and so subsection (B)(ii) does not apply to Debtor.

31. Debtor is neither a hospital, nor an ancillary ambulatory, emergency, or surgical treatment facility, nor a hospice, nor a home health agency, nor a health care institution bearing any similarity thereto. Therefore, it is not among those types of entities listed in §101(27A)(B)(i) as included within the meaning of a "health care business."

32. To the extent that Debtor is not actually the type of entity that was intended to be deemed a HCB under the Bankruptcy Code, a patient care ombudsman is not required to be appointed.

33. To the extent that Debtor may be on the edge or technically meet the meaning, that should be taken into consideration and weighed against appointment of a patient care ombudsman.

34. Debtor understands that this is a matter of first impression in this Court and District. However, other courts have been weighing the following nine (9) nonexclusive factors in considering whether or not to appoint a patient care ombudsman:

    A. The cause of the bankruptcy;

    B. The presence and role of licensing or supervising entities;

    C. Debtor's past history of patient care;

    D. The ability of patients to protect their rights;

    E. The level of dependency of the patients on the facility;

    F. The likelihood of tension between the interests of the debtor and the patients;

    G. The potential injury to patients if Debtor drastically reduced its level of care;

    H. The presence and sufficiency of internal safeguard to ensure appropriate level of care; and

    I. The impact of the cost of an ombudsman on the likelihood of successful reorganization.

*In re Pediatrics at Whitlock, P.C.*, 507 B.R. 10 (Bankr. ND Ga. 2014), citing *In re Alternate Family Care*, 377 B.R. 754 (Bankr. SD Fla. 2007) and *In re Flagship Franchising of Minnesota, LLC*, 484 B.R. 759 (Bankr. D. Minn. 2013).

35. "Generally, the first factor weighs against the appointment of an ombudsman when the cause of debtor's bankruptcy is something other than deficiencies, or allegations of deficiencies, in patient care." *Pediatrics at Whitlock* at 11-12, citing *Alternate Family Care* at 759 (bankruptcy arose from fire at debtor's facility rather than patient care or privacy matters)

and *In re The Total Woman Healthcare Center, P.C.*, 2006 Bankr. LEXIS 3411, 2006 WL 3708164 (Bankr. MD Ga. 2006) (debtor's liabilities arose from taxes rather than deficient patient care); *also see* 3 COLLIER ON BANKRUPTCY ¶ 333.02.

36. A patient care ombudsman should not be appointed where (a) there was no evidence that the bankruptcy was precipitated by allegations of deficient patient care or privacy concerns, (b) debtor is subject to substantial monitoring by a variety of Federal and State regulating agencies and independent accrediting associations, (c) there is no evidence of action taken by Federal, State, or local regulating authorities against debtor due to deficiency in patient care, either pre- or post-petition, (d) debtor has extensive internal quality controls for monitoring patient care at its facilities, and (e) appointment of a patient care ombudsman could result in substantial administrative expenses to the estate.

37. All of the above-listed factors weigh heavily against appointing a patient care ombudsman.

38. Debtor's counsel has contacted Jaime A. Pena and Mary A. Johnson in the Office of the United States Trustee concerning the U.S. Trustee's position on this Motion, but as of the filing of this Motion, Debtor's counsel had not received a response. Debtor's counsel advised Mary Johnson on July 20, 2023 that Debtor intended to file a motion asking the Court not to appoint a patient care ombudsman, and Ms. Johnson informed Ms. Meagle that she understood that the United States Trustee generally opposed such motions.

**WHEREFORE**, the Debtor respectfully requests that the Court enter an order finding and ordering that appointment of a patient care ombudsman in this Case is unnecessary; and for such other and further relief as this Court may deem just and appropriate.

8

Case 23-10566-t11    Doc 30    Filed 08/02/23    Entered 08/02/23 16:00:25 Page 8 of 9

Respectfully submitted,

BUSINESS LAW SOUTHWEST, LLC

*/s/ Shay Elizabeth Meagle*
Shay Elizabeth Meagle
6801 Jefferson St. NE, Suite 210
Albuquerque, NM 87109
Telephone (505) 848-8581
Email: Shay@BusinessLawSW.com
*Bankruptcy Counsel for Debtor*

## CERTIFICATE OF SERVICE

This certifies that a copy of the foregoing Motion was filed electronically on August 2, 2023 and was served electronically by use of the bankruptcy court's electronic transmission facilities on August 2, 2023 on all parties who had entered an appearance in this case prior to the time of such service. in accordance with Bankruptcy Rules 4001(b)(1)(C).

*/s/ Shay Elizabeth Meagle*
Shay Elizabeth Meagle